UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

BANK OF AMERICA, N.A., et al.          :
                                       :
            v.                         :          C.A. No. 06-394S
                                       :
ROLAND W. BURT, JR.                    :

## REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

Before the Court is Plaintiffs' Motion for Summary Judgment (Document No. 8) and Defendant's Cross-Motion for Summary Judgment. (Document No. 10). These Motions have been referred to me for preliminary review, findings and recommended disposition. 28 U.S.C. § 636(b)(1)(B); LR Cv 72. A hearing was held on March 5, 2007. After reviewing the submissions of the parties and listening to the arguments of counsel and pro se Defendant Roland W. Burt, Jr. ("RWB"), I recommend that Plaintiffs' Motion for Summary Judgment be GRANTED and Defendant's Motion for Summary Judgment be DENIED.

### Background

This case unfortunately evokes images of Dickens' classic novel Bleak House and the fictional case of Jarndyce and Jarndyce, an endless litigation. It arises out of the Estate of Magda L. Burt who passed away in 1987. The Estate has been the subject of countless legal skirmishes in this Court, Rhode Island Superior Court and Warwick Probate Court. See, e.g., Lawton v. Bank of America, C.A. No. 05-503S (removed to this Court from Kent County Superior Court on December 2, 2005). Nearly twenty years after Magda Burt's death, the ongoing dispute about her Estate is very much alive.

This particular case is a claim for declaratory and injunctive relief against RWB.  RWB is one of ten beneficiaries of the Estate.  Plaintiffs in this case are Bank of America, N.A. ("BOA"), a successor co-executor of the Estate, and four other beneficiaries of the Estate.  Plaintiffs seek to enforce a Consent Order signed through counsel by BOA and the ten beneficiaries including RWB. The Consent Order was entered as an Order of the Warwick Probate Court by Probate Judge Stephen M. Isherwood on April 6, 2006.  RWB argues that he is not bound by the Consent Order because it was entered into by his counsel without RWB's authority or consent.

### Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  An issue is "genuine" if the pertinent evidence is such that a rational fact finder could render a verdict in favor of either party, and a fact is "material" if it "has the capacity to sway the outcome of the litigation under the applicable law."  Nat'l Amusements, Inc. v. Town of Dedham, 43 F.3d 731, 735 (1st Cir. 1995) (citing Anderson v. Liberty Lobby. Inc., 477 U.S. 242, 248 (1986)).

The moving party bears the burden of showing the Court that no genuine issue of material fact exists.  Nat'l Amusements, 43 F.3d at 735. Once the movant has made the requisite showing, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).  The Court views all facts and draws all reasonable inferences in the light most favorable to the nonmoving party.  Reich v. John Alden Life Ins. Co., 126 F.3d 1, 6 (1st Cir. 1997) (citation omitted).

Cross-motions for summary judgment "simply require [the court] to determine whether either of the parties deserves judgment as a matter of law on facts that are not disputed." Barnes v. Fleet Nat'l Bank, N.A., 370 F.3d 164, 170 (1st Cir. 2004) (internal quotation marks and citation omitted). The legal standard for summary judgment is not changed when parties file cross-motions for summary judgment. Adria Int'l Group, Inc. v. Ferre Dev. Inc., 241 F.3d 103, 107 (1st Cir. 2001). "The court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard." Bienkowski v. Northeastern Univ., 285 F.3d 138, 140 (1st Cir. 2002) (internal quotation marks and citation omitted).

LR Cv 56(a)(1) provides that "[i]n addition to the memorandum of law required by LR Cv 7, a motion for summary judgment shall be accompanied by a Statement of Undisputed Facts that concisely sets forth all facts that the movant contends are undisputed and entitle the movant to judgment as a matter of law." LR Cv 56(a)(1). In addition, "[e]ach 'fact' in a Statement of Undisputed Facts shall be set forth in a separate, numbered paragraph and shall identify the evidence establishing that fact, including the page and line of any document to which reference is made...." LR Cv 56(a)(2). The Court may then assume these facts are admitted to exist "unless expressly denied or otherwise controverted by a party objecting to the motion." LR Cv 56(a)(3). RWB has failed to comply with these requirements.

Plaintiffs' Motion for Summary Judgment was filed with this Court on December 8, 2006. RWB failed to file a timely objection as required by LR Cv 7(b)(1). Rather than granting Plaintiffs' Motion by rule of court, Judge Smith excused RWB's failure to object in a timely fashion and, at a January 3, 2007 conference, granted him an additional thirty days to respond. In fact, at that

conference, Judge Smith went out of his way to explain to RWB what documents he needed to file in opposition to Plaintiff's Motion for Summary Judgment.  RWB was advised that within thirty days he needed to file an objection, statement of disputed facts and a memorandum.  Judge Smith also explained to RWB that Plaintiff had filed a Statement of Undisputed Facts and that "[y]our obligation under the Rules is to tell me whether you agree or disagree with these facts which the plaintiff is saying are undisputed."  <u>See</u> Transcript of January 3, 2007 conference at p. 8.  He also informed RWB that by failing to take these actions, "you're telling me by not objecting that you agree that these facts were true...."  <u>Id.</u> at p. 9.

Ultimately, RWB did not file an objection to Plaintiffs' Motion within the thirty-day period.  Instead, on February 2, 2007, RWB filed his own Motion for Summary Judgment.  Although RWB later filed a Statement of Undisputed Facts on February 28, 2007, he never filed a Statement of Disputed Facts in response to Plaintiffs' claimed Undisputed Facts pursuant to LR Cv 56(a)(3)-(4).  "Valid local rules are an important vehicle by which courts operate.  Such rules carry the force of law, and they are binding upon the litigants and upon the court itself."  <u>Air Line Pilots Ass'n v. Precision Valley Aviation</u>, 26 F.3d 220, 224 (1st Cir. 1994) (citations omitted).  RWB's failure to comply with these requirements results in this Court accepting as true the facts provided by Plaintiffs in their Statement of Undisputed Facts.[1]  <u>See</u> LR Cv 56(a)(3); and <u>Ruiz Rivera v. Riley</u>, 209 F.3d 24, 28 (1st Cir. 2000) (finding that "failure to present a statement of disputed facts, embroidered with specific citations to the record, justifies the court's deeming the facts presented in the movant's statement of undisputed facts admitted....").  Moreover, in opposing summary judgment, "conclusory

---

[1]  The Court has accorded RWB some latitude given his <u>pro se</u> status.  <u>See</u> <u>Mas Marques v. Digital Equip. Corp.</u>, 637 F.2d 24, 27 (1st Cir. 1980) (<u>pro se</u> papers should be read liberally).  <u>Pro se</u> litigants, however, are not excused from compliance with procedural rules or substantive law.  <u>See</u> <u>Eagle Eye Fishing Corp. v. U.S. Dep't of Commerce</u>, 20 F.3d 503, 506 (1st Cir. 1994).

allegations, improbable inferences, and unsupported speculation," are insufficient to establish a genuine dispute of fact.  Smith v. F.W. Morse & Co., 76 F.3d 413, 428 (1st Cir. 1996) (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).  RWB's Reply to Plaintiffs' Motion for Summary Judgment (Document No. 19) is a two-page document containing only his own unsupported beliefs, opinion and innuendo.  It is not sufficient to meet his burden under Fed. R. Civ. P. 56(e).

## Discussion

### A.      Enforcement of the Consent Order

Plaintiffs contend that the undisputed facts demonstrate that the Consent Order was agreed to by Thomas Pearlman, Esquire, in his capacity as RWB's attorney, and that Attorney Pearlman possessed actual and apparent authority to do so.  Thus, Plaintiffs seek a declaration that the Consent Order is valid and enforceable and should be enforced as to RWB.  In response, RWB argues that "the consent order was never entered into by him and that [Attorney] Pearlman possessed no actual or apparent authority to enter into [the] consent order on [RWB's] behalf."  Document No. 10 at p. 1 (emphasis added).  RWB asserts that, in fact, Attorney Pearlman was "under written order not to enter into the consent order."  Id.  Thus, he contends that the Consent Order should be declared invalid and unenforceable.

The initial question is whether Attorney Pearlman was representing RWB at the time he signed the Consent Order on March 31, 2006.  The undisputed facts established that he was RWB's attorney at the time.  In his pleadings, RWB admits that Attorney Pearlman was representing him.  For instance, in his Memorandum in Support (Document No. 10), RWB states that "Thomas W. Pearlman, Esq., counsel for Roland W. Burt, Jr. and Raymond Cyr unilaterally entered into a consent

-5-

order without their consent or authority to do so and without notice of intent and with full knowledge of the financial harm that could result from his actions." Document No. 10 at p. 3. (emphasis added). It is undisputed that Attorney Pearlman signed the Consent Order on RWB's behalf on March 31, 2006, he was present at the April 6, 2006 hearing when the Consent Order was presented to and entered by Judge Isherwood, and he did not object on RWB's behalf. See Document No. 9, Ex. F (Aff. of Sjoberg, ¶¶ 5-6 and pp. 15-22). In addition, RWB attaches to his Answer a copy of an email from him to Attorney Pearlman objecting to the Consent Order and demanding that it be appealed "at once." Document No. 4, Ex. G. On or about April 24, 2005, Attorney Pearlman, as "Attorney for [RWB]," filed a Claim of Appeal at RWB's request, in Warwick Probate Court regarding the Consent Order. Document No. 9, Ex. H. Thus, it is undisputed that Attorney Pearlman was acting as RWB's attorney at the time he signed the Consent Order, when it was entered by Judge Isherwood, and when he filed the appeal at RWB's request.

RWB's primary argument is that he cannot be bound by the Consent Order because he did not authorize Attorney Pearlman to agree to it. While this assertion may be relevant in a dispute between RWB and Attorney Pearlman, it is not material to the legal issue presented in this case. Under Rhode Island law, RWB is bound by his attorney's actions, under these circumstances, even if he may not have specifically authorized such action.

For instance, in McLyman v. Miller, 52 R.I. 374 (1932), a party's attorney agreed to waive a jury trial in order to secure a continuance necessitated by the party's illness. The party later retained a new attorney and moved for relief from the prior jury trial waiver. The motion was denied. The Rhode Island Supreme Court bound the party to his attorney's waiver and reasoned:

> An attorney is an agent employed by a party to a case to manage the same for him. By his employment, the attorney is authorized to take

> such steps in defending the action as he may deem legal, proper, and
> necessary, and his acts in that respect, in the absence of fraud, must
> be regarded as the acts of his client.  Admissions of attorneys bind
> their clients in all matters relating to the progress and control of the
> case.

Id. at 375-376 (citations omitted).  See also D&H Therapy Assoc. v. Murray, 821 A.2d 691, 693

(R.I. 2003) ("we long have held that counsel, in the management of litigation, serves as agent for

the client, and that the client therefore may be bound by the actions of his attorney.").

Similarly, in Cohen v. Goldman, 132 A.2d 414 (R.I. 1957), the Rhode Island Supreme Court

upheld a settlement agreement which was agreed to by a party's attorney without the party's

knowledge or consent.  In fact, the party's attorney forged the party's signature on the settlement

agreement and stole the settlement proceeds.  In refusing to release the party from the settlement,

the Supreme Court explained:

> It seems to us that petitioner's conduct, innocent though it may have
> been, placed his attorney in such a situation that a person of ordinary
> prudence and discretion would have been justified in assuming, as
> respondent did in the case at bar, that the attorney was authorized to
> perform, in behalf of his client, the particular act in question, namely,
> the compromise of the case and the filing of the settlement
> stipulation.  It is the conduct of the client and not that of the attorney
> which must be considered in determining whether apparent authority
> exists, and if it does, the client is bound by what the attorney does.

Id. at 439.  The principle of apparent authority and the holding from Cohen were applied in a more

recent First Circuit case.  In D'Amario v. Butler Hosp., 921 F.2d 8 (1st Cir. 1990), Appellant's state

court action was voluntarily dismissed by his attorney, and he subsequently brought a pro se federal

court action asserting the same claims against the same parties.  Appellant's federal court action was

dismissed by the District Court on the basis of res judicata.  Appellant appealed claiming that he

"did not consent to the consent judgment and was denied a full and fair opportunity for an

-7-

adjudication on the merits." Id. at 10.   The First Circuit rejected the argument that res judicata should not apply since Appellant did not consent to dismissal of his state court suit.  It stated, "Rhode Island law is clear that an attorney is authorized to take such steps in representing his client as he may deem legal, proper and necessary...." Id.  The First Circuit also noted that, Appellant "did nothing to cast doubt on defendants' assertion that [his attorney] acted with apparent authority" Id. at 11.  It accordingly concluded that the "holding in Cohen squarely governs the instant case." Id. The same reasoning applies here.

In the present case, it is undisputed that RWB retained Attorney Pearlman to represent him in the Probate Court matter and other related litigation, and the parties justifiably relied on Attorney Pearlman's actual, or at least apparent, authority to agree to the Consent Order on RWB's behalf. Further, the Consent Order is not a settlement and did not finally determine RWB's substantive rights.  Rather, the Consent Order is an attempt to consolidate the litigation in a single forum and expressly provides that the beneficiaries "reserve all their joint and several claims and defenses against the co-executors of [Magda Burt's] will, and the beneficiaries agree to stay or dismiss (without prejudice) all pending Superior Court actions brought by individual beneficiaries." Document No. 9, Ex. F, pp. 7-13.  In other words, it appears to be an effort to bring some sorely needed order and efficiency to this case.  Attorney Pearlman signed the Consent Order on RWB's behalf and did not object when it was heard and entered by Judge Isherwood.  RWB is bound to the Consent Order as a matter of law.  Both the Probate Court and the parties were entitled to rely on Attorney Pearlman's status as RWB's attorney when entering into the Consent Order.  Attorneys in litigation speak for their clients on a frequent and routine basis.  If a party was able to readily

second-guess and disavow his or her attorney's case management actions after the fact, the lack of certainty would lead to chaos.

### B.      RWB's Legal Arguments

In his submissions, RWB presents two legal arguments in support of his Motion for Summary Judgment. First, RWB argues that R.I. Gen. Laws § 33-23-1 entitles him to "vacate an order of consent if he was never a party to the consent in the first place." While this statute provides a right to appeal Probate Court orders to Superior Court, it does not provide any support whatsoever for RWB's position in this case that he has a "right" to vacate the Consent Order.

Second, RWB argues that Rule 1.8(a) of Rhode Island's Rules of Professional Conduct supports his position. Again, his argument is misplaced, as Rule 1.8(a) has no application to the legal issue presented in this case. Rule 1.8(a) prohibits an attorney from entering into a business transaction with a client unless certain safeguards are met including informed, written client consent. See Lisi v. Pearlman, 641 A.2d 81, 84 (R.I. 1994) (Rule 1.8(a) applied to attorney's acquisition of a security interest in client's property). The Consent Order was not a business transaction between RWB and Attorney Pearlman and thus Rule 1.8(a) is inapplicable.

### Conclusion

For the reasons discussed above, I recommend that the Court GRANT Plaintiffs' Motion for Summary Judgment (Document No. 8) and DENY Defendant's Motion for Summary Judgment. (Document No. 10). I also recommend that the Court enter Final Judgment in favor of Plaintiffs declaring that the April 6, 2006 Consent Order is valid, binding and enforceable as to Defendant and that Defendant is enjoined from taking any action contrary to the terms of the Consent Order.

Finally, pursuant to the LR Cv 7.1(b), Plaintiffs shall promptly present a proposed form of Final Judgment, consistent with the above recommendations, to the Court for consideration.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10) days of its receipt.  See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


  /s/ Lincoln D. Almond
LINCOLN D. ALMOND
United States Magistrate Judge
March 14, 2007

-10-